IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| RUBY LEE COOLER, | ) | C/A No. 2:14-CV-01058-RBH-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B). The Plaintiff, Ruby Lee Cooler, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The Plaintiff applied for DIB on January 5, 2011, and was 55 years old on her amended alleged disability onset date of January 1, 2012. (R. 131 ,41.) The Plaintiff claimed disability due to arthritis, back pain, vision problems, borderline diabetes controlled by diet, and a history of seizures. (R. 172.) The Plaintiff's application for DIB was denied, and she exhausted her

1

administrative remedies.[1] The Administrative Law Judge ("ALJ") issued his decision on November 30, 2012, and it is now the Commissioner's final decision for purposes of judicial review. (R. 21-28.) In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> (2)    The claimant has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3)    The claimant has the following severe impairments: back disorder and obesity (20 CFR 404.1520(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)    After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an 8-hour workday and stand and/or walk for 6 hours in an 8-hour day. However, the claimant can never climb ladders, ropes, or scaffolds. Additionally, she can only occasionally kneel or crawl, and can frequently perform other postural movements.
>
> (6)    The claimant is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> (7)    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of this decision (20 CFR 404.1520(g)).

(R. 23-28.)

---

[1] The Plaintiff submitted additional evidence that was considered by the Appeals Council. This evidence included the results of the Plaintiff's January 23, 2013 ultrasound discussed *infra*.

## SUMMARY OF MEDICAL EVIDENCE

The Plaintiff sought treatment for leg pain and numbness starting on February 26, 2009, and continued seeking the treatment through 2010. (R. 237-239.) She received a prescription medication and a compression stocking to treat the pain. (Id.) On February 23, 2010, her treating physician noted she still had pain, but it had improved. (R. 237.)

On July 6, 2010, the Plaintiff had x-rays taken of her lumbar spine and right knee. (R. 245.) The lumbar spine x-ray showed all of her anatomy was "normal." (Id.) The knee x-rays showed "mild marginal bony hypertrophic change," but were otherwise normal. (Id.) Her left knee was x-rayed on June 2, 2011, and was found to have mild chronic bicompartmental degenerative joint disease. (R. 260.)

In February and March of 2012, the Plaintiff sought treatment for her left knee pain again. (R. 355-356.) At the follow-up examination on March 9, 2012, the doctor noted the knee had mild tenderness to palpitation. (R. 355.)

The Plaintiff was in an accident while riding on a motorcycle on June 17, 2012. (R. 370.) She lost consciousness, fractured five ribs, and lacerated her liver. (R. 370.) She developed a pulmonary embolism. (R. 427.) A cervical spine CT scan showed mild degenerative disc disease but no injury from the accident. (R. 278.) An x-ray of her left knee showed mild osteoarthritis. (R. 307.) The Plaintiff was released from the hospital on June 22, 2012, but she required follow-up treatment including physical therapy, pain medications, and an additional hospital stay. (R. 428; 433-87; 342.) Nothing in these records indicates she would not fully recover from her injuries. (R. 428; 433-87; 342.) On January 23, 2013, the Plaintiff had an ultrasound done of her liver and upper abdomen. (R. 536.) The laceration on her liver was not noted in the findings. (R. 536.)

The Plaintiff was examined by Harriet R. Steinert, M.D., on June 16, 2010, and again on March 14, 2011. (R. 241-42; 248-49.)  Dr. Steinert found her physical examination unremarkable with the exception of moderate tenderness in her lumbar spine and right sacroiliac joint. (R. 249.)  She had a negative left leg raise and positive right leg raise. (Id.)

Angela Saito, M.D., reviewed the Plaintiff's medical records on March 16, 2011. (R. 251-58.)  Dr. Saito found the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pound. (Id.)  She found the Plaintiff could stand or walk for six hours out of an eight hour workday and could sit for six hours out of an eight hour workday. (Id.)  Dr. Saito found the Plaintiff could frequently climb ramps and stairs, balance, stoop, and crouch. (Id.)  She found the Plaintiff could occasionally kneel or crawl and could never climb ladders, rope or scaffolds. (Id.)  Dr. Saito found the Plaintiff to be otherwise without limitation. (Id.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P,

Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the

Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted). Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

### 1. Existence of Substantial Evidence

The ALJ's decision is supported by substantial evidence, and this court recommends the ALJ's decision be affirmed. The Plaintiff argues that "substantial evidence does not support the ALJ's rejection of the evidence regarding Ms. Cooper's multiple impairments." (Dkt. No. 19 at 4.) The Plaintiff supports her argument by stating the ALJ "grossly overestimate[d] Ms. Cooler's level of functioning and [was] quite selective in choosing those medical records to which significant weight was afforded." (Id.) Finally the Plaintiff argues the ALJ disregarded Grid Rule 202.02.

To the extent the Plaintiff is arguing the ALJ erred in Step Two of the sequential analysis by finding that only her "back disorder and obesity" were her severe impairments, the ALJ's decision is supported by substantial evidence. (R. 23.) A severe impairment is one that

6

"significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508. The Plaintiff has the burden to prove that she suffers from a severe impairment. Bowen v. Yuckert, 482 U.S. 137, 145 n.5 (1987).

The ALJ considered every impairment alleged by the Plaintiff or present in the medical evidence in determining which impairments were severe.  (R. 23-25.)  The ALJ analyzed each impairment by discussing the Plaintiff's statements and the medical evidence concerning the impairment.  (Id.)   The ALJ discussed the Plaintiff's knee pain and analyzed the objective medical evidence including x-rays and exam notes.  (R. 23-24.)  The ALJ discussed Plaintiff's liver laceration, mildly displaced ribs, pulmonary embolism and head injury that resulted from her motorcycle accident and found that no medical evidence existed showing the effects of these injuries lasted longer than twelve months.  (R. 24.)  The ALJ discussed the Plaintiff's cervical spine impairments and cited to a CT scan and exam notes that showed only mild degenerative disc disease.  (Id.)  The ALJ discussed the Plaintiff's right shoulder and scapula injury and found she went to physical therapy and no medical evidence showed the effects of the injury lasted longer than twelve months.  (Id.)  The ALJ discussed the Plaintiff's vertigo and found no medical evidence in the record showed it required any ongoing treatment or that is lasted longer than twelve months.  (Id.)  The ALJ found that the Plaintiff's vision was corrected to 20/30 and was

therefore not severe. (Id.) The ALJ found the Plaintiff's medical records did not contain any conclusive evidence she had diabetes or sought treatment for blood sugar issues. (R. 24-25.) The ALJ discussed the Plaintiff's seizures and found she had not had a seizure since the alleged onset date of her disability and had not had one for seven years prior to that date based on her medical records. (Id.) Contrary to the Plaintiff's argument, the ALJ did consider every possible impairment the Plaintiff claimed and properly examined all of the relevant medical evidence. The ALJ's Step Two finding is supported by substantial evidence.

The Plaintiff's argument that the ALJ improperly disregarded grid rule § 202.02 is misplaced. Grid rule § 202.02 does not apply to individuals that can perform past relevant work. 20 C.F.R. pt. 404, subpt. P. app. 2, § 202.00(c). In the case at bar, the ALJ found the Plaintiff could perform past relevant work as a security guard (R. 28.) The ALJ found this based on the Plaintiff's residual functional capacity ("RFC") including the opinion of the vocational consultant. (R. 188-189.) The Plaintiff's argument that the ALJ "grossly overestimate[d] level of functioning is discussed *infra* in this court's RFC discussion. As to the ALJ's assessment of the Plaintiff's impairments in Step Two of the sequential process and the applicability of grid rule § 202.02, this court finds the ALJ's decision is supported by substantial evidence.

### 2. The ALJ's Residual Functional Capacity Assessment

The ALJ's RFC assessment properly contained a "function by function" analysis and is supported by substantial evidence. This court recommends the ALJ's decision be affirmed. The Plaintiff's argument regarding the ALJ's RFC assessment is that the ALJ "found she could perform her past relevant work without making any findings as to whether the functions required by her post relevant work were precluded by her impairments." (Dkt. No. 19 at 5.) The Plaintiff

states that the ALJ "failed to perform the requisite function by function analysis" in finding her capable of past work. (Id.)

"[R]esidual functional capacity is the most [the Plaintiff] can still do despite [her] limitations." Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (quoting 20 C.F.R. §§ 404.1545(a)). In assessing a claimant's physical abilities for RFC purposes, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions…, may reduce [the claimant's] ability to do past work…." 20 C.F.R. § 404.1545. The ALJ in the case at bar specifically made findings limiting the Plaintiff's ability to sit, stand, walk, lift, carry, and perform other postural functions. (R. 25) The ALJ based his assessment on the Plaintiff's statements[2], objective medical evidence such as x-rays and straight leg raise tests, medical records and medical source opinions[3]. (R. 25-28.) The ALJ specifically analyzed the evidence in the record regarding Plaintiff's back pain and obesity and imposed limitations for her back pain. (R. 26-27.) The ALJ considered the Plaintiff's non-severe impairments as well citing her bilateral knee pain. (R. 27.) The ALJ specifically accorded great weight to the opinion of the vocational consultant who found the Plaintiff could perform past relevant work. (R. 27.)

The Plaintiff does not identify any functional limitation that the ALJ should have considered but did not. Additionally, the Plaintiff does not identify any evidence to buoy her argument that the RFC does not support the ALJ's finding she could perform past relevant work.

---

[2] The Plaintiff testified she can only walk or stand for ten minutes at a time and can only sit for ten to fifteen minutes at a time. (R. 42-43.) The Plaintiff testified she cooks, does laundry, drives short distances, and shops using the electric handicap buggies. (R. 43.) The Plaintiff stated she uses a cane "all the time" since her motorcycle accident and used it before the wreck for her knees. (R. 46.)

[3] The ALJ's RFC assessment is substantially similar to the RFC assessment of Dr. Saito. (R. 251-58.)

This court finds that the ALJ's RFC assessment and his finding the Plaintiff could perform past relevant work are supported by substantial evidence.

## **RECOMMENDATION**

Based on the foregoing, the undersigned concludes that the findings of the ALJ are supported by substantial evidence and RECOMMENDS that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

July 27, 2015

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE